**E-Filed 8/25/10**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| MAYA ARMOUR, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>IP UNITY LONG TERM DISABILITY PLAN; SUN LIFE AND HEALTH INSURANCE COMPANY (U.S.), formerly GE GROUP LIFE ASSURANCE COMPANY; and DOES 1 through 50;<br><br>        Defendants. | Case Number C 10-189 JF (HRL)<br><br>**ORDER[1] RE CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE APPLICABLE STANDARD OF REVIEW**<br><br>[Docket Nos. 28 & 32] |

Plaintiff Maya Armour ("Plaintiff") and Defendant Sun Life and Health Insurance Company ("Sun Life") have filed cross-motions for partial summary judgment with respect to the applicable standard of review in this ERISA action. The Court has considered the moving and responding papers and the oral argument of counsel presented at the hearing on August 13, 2010. For the reasons discussed below, Plaintiff's motion will be granted, and Sun Life's motion will

---

[1] This disposition is not designated for publication in the official reports.

Case No. C 10-189 JF (HRL)
ORDER RE CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE APPLICABLE STANDARD OF REVIEW
(JFEX1)

be denied.

## I. BACKGROUND

Plaintiff filed this action on January 14, 2010 pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq*. The dispute arises from Sun Life's denial of Plaintiff's claim for long-term disability benefits. Plaintiff became an employee of IP Unity in January 2004. (Armour Decl. ¶ 2.) While employed by IP Unity, she enrolled in the IP Unity Long Term Disability Plan. (*Id.*) On January 29, 2007, Plaintiff underwent surgery as a result of an illness, but she continued suffering from effects of the illness even after the surgery. (Armour Decl. ¶ 3-4.) She submitted a claim to Sun Life for short-term disability benefits, and that claim was accepted. (Armour Decl. ¶ 5.) On April 20, 2007, she submitted a claim for long-term disability benefits, but that claim was denied on June 19, 2007. (Armour Decl. ¶ 7.) She appealed that determination on December 11, 2007, and on April 8, 2008, Sun Life upheld the denial of long-term benefits. (Armour Decl. ¶ 8.)

While she was employed by IP Unity, Plaintiff received a document entitled "Benefits Package for IP Unity" (the "Booklet"). (Armour Decl. ¶2; Ex. A.) The Booklet "contains benefit plan summaries as they apply to eligible employees and their covered dependents." (Armour Decl. Ex. A at PLAN 000035.) Among other things, the Booklet describes plan participants' prescription drug coverage, (Armour Decl. Ex. A at PLAN 000040), chiropractic benefits, (*id.* at PLAN 000046), dental benefits, (*id.* at PLAN 000050), short-term disability benefits, (*id.* at PLAN 000053), and long-term disability benefits, (*id.* at PLAN 000054). After her claim for long-term disability benefits was denied in June 2007, Plaintiff asked Sun Life to provide copies of her "insurance policies and plan documents." (Armour Decl. ¶ 9.) In response to that request, Sun Life provided Plaintiff with two documents: the certificate of insurance ("Certificate") and a two-page memorandum entitled "Your Rights Under ERISA" (the "Memorandum"). (Armour Decl. ¶¶ 9-10.) Plaintiff alleges that she previously had not received either document. (Armour Decl. ¶ 11.)

///

2

## II.  LEGAL STANDARDS

The standard applied to a motion seeking partial summary judgment is identical to the standard applied to a motion seeking summary judgment with respect to the entire case. *See Urantia Foundation v. Maaherra*, 895 F. Supp. 1335, 1335 (D. Ariz. 1995). A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of showing that there is no material factual dispute. If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991). The parties agree that the issue presented by the instant cross-motions is appropriate for resolution by summary judgment.

## III.  DISCUSSION

### A.  Standards of Review

Plaintiff contends that the applicable standard of review is *de novo*, "which is to say [that courts] decide for themselves what a term of the trust means instead of deciding whether the plan administrator [or the claims fiduciary] was reasonable in how it construed the term." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1088 (9th Cir. 1999). Sun Life disagrees, asserting that the applicable standard of review is abuse of discretion, a more deferential standard under which its decisions are reviewed only for "arbitrariness and capriciousness." *See Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1284 (9th Cir. 1990). Following the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), a "denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority

3

to determine eligibility for benefits or to construe the terms of the plan." *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1204 (9th Cir. 2000) (citation omitted and brackets in the original). The power to apply discretionary authority must be "unambiguously retained." *Id*. Thus, "the default is that the administrator [or the claims fiduciary] has no discretion, and the administrator [or the claims fiduciary] has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." *Kearney*, 175 F.3d at 1089.

**B.      The plan documents**

In order to determine whether the plan at issue here grants discretionary authority, the Court first must determine which documents constitute "the plan." One of "ERISA's core functional requirements [is] that 'every employee benefit plan shall be established and maintained *pursuant to a written instrument*.' 29 U.S.C. § 1102(a)(1) (emphasis added). In the words of the key congressional report, '[a] written plan is to be required in order that every employee may, *on examining the plan documents*, determine exactly what his rights and obligations are under the plan.'" *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (quoting H. R. Rep. No. 93-1280, p. 297 (1974)) (emphasis in the original). However, determining "what constitutes 'the plan' for purposes of ERISA" is a question as to which confusion is "all too common." *Sperandeo v. Lorillard Tobacco Co., Inc.*, 460 F.3d 866, 870 (7th Cir. 2006) (quoting *Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 712 (7th Cir. 1999)).

"ERISA requires only that an employee benefit plan be established and maintained by a 'written instrument.' 29 U.S.C. § 1102(a)(1). No additional formalities are required. In particular, there is no requirement that documents claimed to collectively form the employee benefit plan be formally labeled as such." *Horn v. Berdon, Inc. Defined Ben. Pension Plan*, 938 F.2d 125, 127 (9th Cir. 1991). "[O]ften[,] the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as 'the plan.'" *Health Cost Controls,* 187 F.3d at 712. "Rules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services are the sorts of provisions that constitute

4

a plan." *Pegram v. Herdrich*, 530 U.S. 211, 223 (2000) (citing *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 974 (5th Cir. 1991)).

The parties dispute which of the three documents at issue – the Booklet, the Certificate, and the Memorandum – are relevant to their rights and obligations under the plan. The parties agree that only the Memorandum includes language sufficient to confer discretion upon Sun Life. The Memorandum states that:

> GE Group Life Assurance Company,[2] as Claims Fiduciary, shall have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues relating to eligibility for benefits. All findings, decisions, and/or determinations of any type made by the Claims Fiduciary shall not be disturbed unless the Claims Fiduciary has acted in an arbitrary and/or capricious manner. Subject to the requirements of law, the Claims Fiduciary shall be on the sole judge of the standard of proof required in any claims for benefits and/or in any question of eligibility for benefits. All decisions of the Claims Fiduciary shall be final and binding on all parties.

(Armour Decl. Ex. C at PLAN 000031.) Because it says both "in sum [and] substance that the plan administrator or fiduciary has authority, power[,] or discretion to determine eligibility or to construe the terms of the plan," *Sandy*, 222 F.3d at 1207, the Memorandum, if it is considered part of the plan, plainly would require deferential review.

### 1. The Booklet

Plaintiff contends that the Booklet – which does not contain language reserving discretion to Sun Life – is the only written instrument that establishes the plan, because the Booklet

---

[2] Sun Life asserts that it is the successor in interest of GE Group Life Assurance Company. It requests judicial notice of certificates from the Insurance Department of the State of Connecticut approving the change of name from GE Group Life Assurance Company to Genworth Life and Health Insurance Company, (Sun Life's RJN Ex. A), and the change of name from Genworth Life and Health Insurance Company to Sun Life, (Sun Life's RJN Ex. B). This evidence was presented for the first time in connection with Sun Life's reply brief in support of its motion for partial summary judgment. Ordinarily, "'where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (quoting *Black v. TIC INV. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)) (brackets in the original). However, Plaintiff does not object to Sun Life's request for judicial notice, and the documents contain the type of fact that is the proper subject for judicial notice. *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."). Accordingly, the request for judicial notice will be granted.

5

contains each of the elements required by 29 U.S.C. § 1102(b). Section 1102(b) requires an ERISA employee benefit plan to "(1) provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this title, (2) describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan . . . , (3) provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan, and (4) specify the basis on which payments are made to and from the plan." 29 U.S.C. § 1102(b). However, while Plaintiff explains how long-term disability payments are made *from* the plan, (Armour Decl. Ex. A PLAN 000054), she does not refer to the sections of the Booklet that specify the basis on which payments are made *to* the plan. Moreover, at the bottom of the only page that describes long-term disability benefits, the Booklet states that:

> This is a summary of the benefits provided under a group insurance plan underwritten by GE Group Life Assurance Company. The summary is an outline only and is not a contract. This plan contains certain exclusions and limitations as well as terms under which coverage may be continued or discontinued. Please refer to the Certificate of Insurance for a complete description of actual plan benefits and terms of coverage.

(Armour Decl. Ex. A at PLAN 000054.) Rather than constituting the entire "plan," the Booklet purports only to be a summary and refers beneficiaries to the Certificate for a description of other important terms of the plan.

Even so, under certain circumstances a summary still may govern the obligations under an ERISA benefit plan. In addition to establishing a written instrument for the plan, "an employer must provide employees with a written Summary Plan Description ("SPD") which describes the employees' plan." *Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1329 (9th Cir. 1996) (citing 29 U.S.C. § 1022(a)(1)). "Congress intended that plan documents and the SPDs exclusively govern an employer's obligations under ERISA plans." *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir. 1988). "The SPD is the statutorily established means of informing participants of the terms of the plan and its benefits." *Pisciotta*, 91 F.3d at 1329 (citing *Alday v. Container Corp. Of America*, 906 F.2d 660, 665 (11th Cir. 1990)).

"In order to constitute a SPD, ERISA requires that a document contain the following information:

6

> (1) the name and type of administration of the plan; (2) the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; (3) the name and address of the administrator; (4) names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator); (5) a description of the relevant provisions of any applicable collective bargaining agreement; (6) the plan's requirements respecting eligibility for participation and benefits; (7) a description of the provisions providing for nonforfeitable pension benefits; (8) circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; (9) the source of financing of the plan and the identity of any organization through which benefits are provided; (10) the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; (11) the procedures to be followed in presenting claims for benefits under the plan; and, (12) the remedies available under the plan for the redress of claims which are denied in whole or in part."

*Pisciotta*, 91 F.3d at 1329 (citing 29 U.S.C. § 1022(b)). The Booklet lacks at least some of these features, including the name and address of the person designated as agent for the service of legal process, the date of the end of the plan year, and whether the records of the plan are kept on a calendar, policy, or fiscal year basis. Most importantly, the Booklet does not describe the circumstances that may result in disqualification or ineligibility for benefits. The Booklet does indicate that benefits may be denied for certain pre-existing conditions, but it also notes that "the plan contains certain exclusions and limitations . . . ." (Armour Decl. Ex. A at PLAN 000054.) Among other things, the Certificate excludes coverage for disability resulting from war, participation in a riot, self-inflicted injury, and participating in the commission of a felony. (Armour Decl. Ex. B at PLAN 000018.) Because the Booklet does not describe any of these exclusions, the Booklet lacks at least some of the information required by 29 U.S.C. § 1022(b) and is not a SPD.

The Ninth Circuit appears to have concluded that if a summary booklet is not a SPD, it cannot be a plan document. In *Pisciotta*, 91 F.3d at 1329-30, the plaintiffs identified insurance booklets that represented that the plaintiffs would receive lifetime medical insurance premium payments. The court concluded that the booklets were not SPDs because they lacked at least some elements of 29 U.S.C. § 1022(b). *Id.* at 1330. Although the representations in the booklets did support the plaintiffs' arguments, "the district court properly granted [the defendant's] motion for summary judgment regarding [the alleged promise to provide lifetime medical insurance premium payments]. [Citations.] *No plan documents exist which support such a*

7

*promise.*" *Id.* (emphasis added). *See also Burstein v. Ret. Account Plan for Emples. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 375 n.14 (3d Cir. 2003) ("A plan brochure is distinct from a plan document in that it is neither comprehensive or detailed, and is more akin to a commonplace flyer. Whereas Congress has expressed its intent with respect to SPDs, it has not expressed any such intent with respect to plan brochures. [Citation.] Accordingly, a plan brochure cannot form the basis for plan benefits."). Plaintiff contends that the Booklet is the only document that could be a plan document because it was the only document regarding her benefits that she received during her employment. However, *Pisciotta* appears to be controlling on this point. Even though the only documents supplied to the plaintiff in that case did not qualify as SPDs, the Ninth Circuit still did not consider the representations made in a summary booklet to be part of the plan. *Pisciotta*, 91 F.3d at 1330.

Because the only document with discretionary language – the Memorandum – was not distributed to her, Plaintiff argues that it would be unfair to allow Sun Life to rely on the provisions of that document. While the Court is sympathetic to Plaintiff's position, *Pisciotta* appears to be controlling. The summaries at issue in that case contained a disclaimer stating that they "describe[] provisions of the group insurance program contained in the contract between the company and the insurance carrier. The contract shall be the controlling document." *Pisciotta*, 91 F.3d 1330. The contract reserved the right of the defendant to modify the plan, and the Ninth Circuit concluded that the reservation of that right was effective because "[t]he disclaimer clearly stated that the contract was the controlling document [and] [t]he contract was available for review by any employee who wished to see it." *Id*. Here, the Booklet indicates that it does not include certain "exclusions and limitations as well as terms under which coverage may be continued or discontinued," and refers beneficiaries to the Certificate for the complete terms. (Armour Decl. Ex. A at PLAN 000054.) The Booklet also states that a plan member may "[e]xamine . . . all plan documents" and "obtain copies of all plan documents upon written request to the plan Administrator." (Armour Decl. Ex. A at PLAN 000060.)

Plaintiff relies on several cases from other circuits, but none appear to be directly on point. In *Heidgerd v. Olin Corp.*, 906 F.2d 903, 908 (2d Cir. 1990), the court concluded that

8

"where . . . the terms of a plan and those of a plan summary conflict, it is the plan summary that controls," but that court appears to have concluded that the summary at issue was a SPD. In *Gibbs v. CIGNA Corp.*, 440 F.3d 571, 576 (2d Cir. 2006), the court was faced with the task of determining which of two SPDs was controlling. Here, it is unclear whether any of the documents in the record is a SPD. *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) stated that "the employer should have to make clear whether a plan confers solid rights or merely the 'right' to appeal to the discretion of the plan's administrator," and *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 660 (7th Cir. 2005), held that discretionary language in a document that is not a "plan document" was insufficient to meet the type of notice required by *Herzberger*. Only the Memorandum clearly purports to confer discretion, and it appears to have been available for review. The issue thus is whether the Memorandum is a plan document. That issue is discussed below.

### 2. The Certificate

Plaintiff contends that the Certificate is not a plan document, asserting conclusorily that it does not contain the requisite provisions and disclosures required by ERISA. However, the precedent upon which she relies does not necessarily support her argument. *See Pegram*, 530 U.S. at 223 ("[W]hen employers contract with an HMO to provide benefits to employees subject to ERISA, the provisions of documents that set up the HMO are not, as such, an ERISA plan . . . ."); *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 373 (4th Cir. 2003) (quoting *Wallace v. Reliance Standard Life Ins. Co.*, 318 F.3d 723, 724 (7th Cir. 2003) ("Importantly, 'a contract of insurance sold *to* a plan is not itself 'the plan.'" (emphasis in the original)). Nonetheless, the Supreme Court has held that "the agreement between an HMO and an employer who pays the premiums may . . . provide elements of a plan by setting out rules under which beneficiaries will be entitled to care." *Pegram*, 530 U.S. at 223. Here, the Certificate sets out the rules under which Plaintiff and the other beneficiaries are entitled to care, and thus it describes the benefit elements of the plan purchased by IP Unity. *See also Sterio v. HM Life*, No. 08-174262010, 2010 U.S. App. LEXIS 4615, at *4 (9th Cir. Mar. 4, 2010) (quoting *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995)) ("[I]t is clear that an

9

insurance policy may constitute the 'written instrument' of an ERISA plan . . . ." (brackets in the original)).

**3. The Memorandum**

Plaintiff contends that even if the Certificate is a plan document, the Memorandum is not, arguing that only the terms of the Certificate can define the plan purchased by IP Unity and that the Memorandum is not part of the Certificate.[3] Both Plaintiff and Sun Life submit copies of the Certificate and the Memorandum, and those copies have slight, but significant, differences. Sun Life offers the Certificate and the Memorandum as a single exhibit. (Peters Decl. Ex. A).[4] Plaintiff asserts that when Sun Life provided her with copies of the Certificate and Memorandum, the documents were presented separately, (Armour Decl. ¶¶ 9-10), and accordingly she submits the documents in separate exhibits, (Armour Decl. Exhs. B-C).

The copies of the Certificates are identical through page 28. Up to that point, the upper right corner of each page bears a page number, and the lower left corner of each page includes

---

[3] Plaintiff points out that the Certificate includes an integration clause, which states that "[t]he group policy issued to the Policyholder, together with the application of the Policyholder, is the entire contract between us [Sun Life] and the Policyholder." (Armour Decl. Ex. B at PLAN 000025.) However, this argument is made for the first time in Plaintiff's reply brief in support of her motion for partial summary judgment. As discussed above, "where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond." *Provenz*, 102 F.3d at 1483 (quoting *Black*, 900 F.2d at 116) (brackets in the original). While Plaintiff submitted a copy of the Certificate in connection with her opening brief, her argument in that brief did not rely upon the integration clause, and it also is unfair to consider new arguments presented for the first time in the reply brief without providing the opposing party an opportunity to respond. *See Ferguson v. City of Phoenix*, 931 F. Supp. 688, 696 (D. Ariz. 1996).

[4] Plaintiff objects to the Peters Declaration, arguing that it is untimely filed and unreliable. The declaration was filed three days after the deadline for reply briefs. Sun Life submitted a copy of the Certificate and Memorandum in connection with its opening brief, but as an exhibit to the declaration of Dennis Rhodes, who is counsel for Sun Life and likely does not have personal knowledge with respect to the Certificate. *See* Fed. R. Evid. 901(a) (as a condition precedent to admissibility, there must be sufficient evidence "to support a finding that the matter in question is what its proponent claims."). Sun Life resubmitted the Certificate and Memorandum as an exhibit to the declaration of Kathleen Peters, who is the associate director of long-term disability appeals for Sun Life. Because it concludes that Plaintiff has not been prejudiced by the late filing of Peters' declaration, the Court may consider the declaration.

10

the designation "GC-B-" followed by some other combination of letters and numerals. (*See* Armour Decl. Ex. B; Peters Decl. Ex. A.) The tables of contents also are identical. (*Id.*) Part 15, entitled "Arbitration," is listed as the last section, and that section begins and ends on page 28. (*Id.*) However, immediately following page 28, the copy of the Certificate supplied by Plaintiff includes a page that otherwise is blank except for the phrase "END OF INSURANCE CERTIFICATE." (Armour Decl. Ex. B at PLAN 000029.) The page does not include any text either on the upper right corner or on the lower left. However, in Sun Life's copy of the Certificate, the Memorandum follows immediately after page 28. (Peters Decl. Ex. A at AR29-30.)

Plaintiff argues that the "END OF INSURANCE CERTIFICATE" page demonstrates that the Certificate and the Memorandum are separate documents. This argument is bolstered by the fact that the pages of the Memorandum are formatted differently from the first twenty-eight pages of the Certificate. The pages of the Memorandum do not contain page numbers in the upper right corner, and the lower left corner bears the phrase "ERISA 2002" rather than the "GC-B-" designation. (Peters Decl. Ex. A at AR29-30.) While the page with the phrase "END OF INSURANCE CERTIFICATE" is not included in the copies of the Certificate submitted by Sun Life, Sun Life neither challenges the accuracy of Plaintiff's copy nor offers an explanation as to why that page was included in the copy it provided to Plaintiff but not in the copies that it has submitted to the Court. Because Sun Life bears the burden of demonstrating that its reservation of discretion is unambiguous, *see Thomas v. Oregon Fruit Prods. Co.*, 228 F.3d 991, 994 (9th Cir. 2000), the Court analyzes the legal effect of the Certificate that was provided to Plaintiff. On that basis, the Court concludes that the Memorandum is a document separate from the agreement embodied in the Certificate.

The Memorandum nonetheless could be part of the plan. *Horn*, 938 F.2d at 127 (noting that a collection of documents could form a benefit plan). The Certificate states that it is governed by the laws of Rhode Island, (Armour Dec. Ex. B at PLAN 00001; Peters Dec. Ex. A at AR1), and under Rhode Island law, two agreements "executed as part of one transaction" are evidence of " the final and complete expression of the agreement of the parties, [citation], and . .

11

Case No. C 10-189 JF (HRL)
ORDER RE CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE APPLICABLE STANDARD OF REVIEW
(JFEX1)

1 . should be construed together 'to understand the mutual rights and obligations of the parties [citation.]'" *Maderios v. Savino*, 418 A.2d 839, 842 (R.I. 1980) (quoting *Dockery v. Greenfield*, 136 A.2d 682, 685 (R.I. 1957)). In *Maderios*, the Rhode Island Supreme Court concluded that two notes were executed as part of a single transaction because "[t]he second note contain[ed] a number in the upper left-hand corner which, except for several digits missing because of a punched hole, [was] the same number as appears on the first note to the bank[,] . . . the financing terms of both notes in both form and amount [were] the same[,] [and the] plaintiff herself testified that [the] defendant had paid the installments on the first note directly to the bank and that these payments had satisfied [the] defendant's obligation on the second note." *Id.*

Here, however, as noted previously, the Memorandum does not include the same pagination as the Certificate, nor does it bear any other indication that it is linked to *the plan purchased by IP Unity*. Sun Life points to only two facts that support its contention that the Memorandum is linked to the plan: (1) the fact that it mailed a copy of the Memorandum to Plaintiff when she requested copies of the plan and (2) the fact that it submitted the Memorandum to the Court in the same exhibit as the Certificate. However, the record contains no evidence linking *IP Unity* to the Memorandum. Without evidence on this point, Sun Life has not met its burden of establishing that the plan *as purchased by IP Unity* reserved discretion to Sun Life.

The record also contains insufficient evidence to support an inference that Sun Life had the authority to confer discretion upon itself unilaterally subsequent to IP Unity's purchase of the plan. The Certificate provides that:

> We [Sun Life] and the Policyholder can change the policy . . . at any time if we and the Policyholder agree in writing to make such a change. Any such change will not be valid without the consent of any person other than the Policyholder and us. All such changes will be signed by our President, Vice President, Secretary or Treasurer and countersigned by one of our registrars or our President, Vice President, Secretary or Treasurer.

(Armour Decl. Ex. B at PLAN 000025.) Because the Certificate is silent with respect to Sun Life's discretion, and "the default is that the administrator [or the fiduciary] has no discretion," *Kearney*, 175 F.3d at 1089, a subsequent provision attempting to confer that discretion would be a change to the plan. Under the terms of the plan itself, Sun Life could change the plan only with

12

the agreement of the policyholder, and certain signatures were required. Those signatures are lacking on each of the copies of the Memorandum that are in evidence.

The cases cited by Sun Life in support of its position are unpersuasive. In *TECO Coal Corp. v. Looney*, Case No. 1:08CV00024, 2008 U.S. Dist. LEXIS 95826 (W.D. Va. Nov. 25, 2008), the court found that TECO Coal Corporation was a fiduciary under the plan because it was listed as a fiduciary in a document entitled "ERISA Information and Statement of ERISA Rights." *Id.* at *7 n.3. Although the document explicitly was not part of the "benefits booklet," the court still considered it as evidence of the terms of the plan. *Id.* This Court agrees that a "benefits booklet" is not the only document that can constitute a benefit plan. *See Horn*, 938 F.2d at 127. In this instance, the Certificate does not include the terms in the Memorandum, and there is insufficient other evidence to link the Memorandum to the plan purchased by IP Unity. Sun Life also relies upon *Huizing v. Metro. Life Ins. Co.*, Case No. 1:08-cv-878, 2010 U.S. Dist. LEXIS 31373, at *7 (W.D. Mich. Mar. 31, 2010), in which the court considered a document outside of the certificate to be a plan document. However, *Huizing* does not discuss whether there was evidence that the plan administrator agreed to the provisions in the document at issue. Finally, in *Geiger v. Hartford Life Ins. Co.*, 348 F. Supp. 2d 1097, 1103 (N.D. Cal 2004), neither party in that case disputed that a "booklet-certificate setting forth the terms of the long-term disability plan" and a "statement of ERISA rights and claim procedures" combined to form the SPD.

## IV. CONCLUSION

The Court concludes that Sun Life has not met its burden of demonstrating that the plan unambiguously conferred it with discretion. *Thomas*, 228 F.3d at 994. Because the "the default is that the administrator [or the claims fiduciary] has no discretion," *Kearney*, 175 F.3d at1089, the Court will grant Plaintiff's motion and deny Sun Life's motion. The applicable standard of review is *de novo*.

**IT IS SO ORDERED.**

DATED: 8/23/10

*/s/ Jeremy Fogel*
JEREMY FOGEL
United States District Judge